# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 07 2016, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan Lee Ciyou
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Stephenie K. Gookins
Cate, Terry & Gookins, LLC
Carmel, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Sadia Khan,

*Appellant-Respondent,*

v.

Syed Hussain,

*Appellee-Petitioner.*

April 7, 2016

Court of Appeals Case No.
29A05-1507-DR-870

Appeal from the Hamilton
Superior Court

The Honorable Wayne A.
Sturtevant, Judge

Trial Court Cause No.
29D05-0904-DR-828

**Pyle, Judge.**

# Statement of the Case

Sadia Khan ("Mother") moved to Michigan with the parties' daughter when she was an infant. When their daughter was four-years-old, Syed Hussain ("Father") filed a motion for a custody and parenting time evaluation, which the parties had agreed to in their dissolution agreement. Mother filed a motion to transfer jurisdiction of the case to Michigan. The trial court denied Mother's motion in a detailed order. Our review of the evidence reveals the trial court did not abuse its discretion in denying Mother's motion.

We affirm.

# Issue

Whether the trial court abused its discretion in denying Mother's motion to transfer jurisdiction to Michigan.

# Facts

Mother and Father were married in May 2007. At the time, Mother was a physician in Michigan, and Father was a physician in Indianapolis. When Mother completed her employment obligation in Michigan in September 2008, she moved to Indianapolis. Mother and Father's daughter, S., was born in Indianapolis in December 2008. Father filed a petition for dissolution of marriage in the Hamilton Superior Court in April 2009. The following month, Mother and Father agreed that Mother would have sole physical and legal

custody of S. and that Mother would return to Michigan with S. Father was granted parenting time in Michigan supervised by Mother during S.'s infancy.

[4] After Mother and Father reached an agreement, they filed a twenty-page final settlement agreement in the Hamilton Superior Court in January 2011. Pursuant to the terms of the agreement, Mother and Father's marriage was dissolved and Mother was awarded sole physical and legal custody of S. Father was granted parenting time in Michigan supervised by Mother. Mother also agreed to take S. to Indiana to visit Father no less than three times per year. Mother and Father agreed that after S. turned three years old, Meridian Psychological Associates in Indianapolis would perform parenting time and custody evaluations. In addition, Mother and Father further agreed that "any legal actions to enforce this Agreement shall be governed by the . . . laws of the State of Indiana applicable at the time of any such modification action." (App. 103).

[5] Six months after Mother and Father signed the agreement, Father filed a motion for rule to show case wherein he alleged that Mother had been uncooperative in allowing him to exercise his parenting time. Specifically, according to Father, Mother was denying Father's requests for parenting time and refusing to allow Father to make up any missed parenting time. In October 2011, Mother and Father entered into an agreement, which allowed Father to make up his missed parenting time in Indianapolis.

[6] In June 2013, Father filed a petition for evaluation and modification of parenting time wherein he pointed out that S. was over four years old. He requested an evaluation with Meridian Psychological Associates as set forth in the final settlement agreement. Father alleged that it would be in S.'s best interest for the father-daughter relationship to be strengthened by unsupervised and more regular parenting time to occur at Father' residence rather than at a hotel in Michigan.

[7] The trial court immediately ordered Mother and Father to participate in an evaluation with Meridian Psychological Associates. Mother filed a motion to stay the evaluation as well as a petition to transfer jurisdiction to Michigan. In her petition, Mother argued that based upon the factors set forth in section 8(b) of the Uniform Child Custody Jurisdiction Act ("UCCJA"), Indiana should decline to exercise jurisdiction and should order the matter transferred to Michigan.

[8] In July 2013, the trial court denied Mother's motion to stay, explaining that the "parties themselves agreed in their Settlement Agreement to utilize an evaluation from Meridian Psychological Associates and [Mother] has failed to provide a sufficient reason why this should not be done." (App. 174). Thereafter, in August 2013, the trial court also denied, without a hearing, Mother's petition to transfer jurisdiction. Specifically, the trial court explained that the parties "ha[d] done an excellent job in setting forth facts (mostly uncontested) and law supporting their positions so that a hearing [was] unnecessary." (App. 190).

[9]     In September 2013, the trial court granted Mother's motion for reconsideration as well as a hearing. After granting two unopposed motions to continue, the trial court held the hearing in March 2014, shortly after a clinical psychologist from Meridian Psychological Associates had completed a thirty-seven page detailed parenting time and custody evaluation. Neither Mother nor Father called witnesses at the hearing. Rather, both parties simply presented legal argument. Following the hearing, the trial court issued a detailed order that provides in relevant part as follows:

> 2.      The Court has considered the factors set out in INDIANA CODE § 31-21-5-8(b).
>
> 3.      The first factor is whether domestic violence has occurred and is likely to continue occurring in the future. While Mother has alleged violence in the marriage, Father has denied her allegations. In the absence of any evidence in the record corroborating Mother's allegations, the Court finds that domestic violence is not a factor.
>
> 4.      The length of time the parties' child, [S.], has resided outside of Indiana. [S.] . . . has continuously resided in Saginaw, Michigan, for more than five years. . . . Given the child's age, however, her degree of involvement in the community and her range of activities would not be as great as with an older child, and therefore, the Court finds that this is not a major factor at this time. Further, the parties are agreed that the long-term goal is the reinstitution of reasonable parenting time for Father . . . that would involve Father exercising parenting time in Indiana, and [S.] being in Indiana.
>
> 5.      The distance between the Indiana court and the Michigan court. Mother asserts without contradiction that the distance is approximately 370 miles one way with a driving time of six and

one-half hours. This is not an unreasonable travel time by itself and does not consider the lesser travel time for air travel, which both parties are financially able to afford.

6. The relative financial circumstances of the parties. Although Mother points out a financial disparity in the income between the parties, travel would not impose a financial hardship on either party, with Mother's annual income being $190,000 and Father's being approximately $240,000.

7. An agreement of the parties as to which state should assume jurisdiction. While no explicit agreement exits to litigate issues in Indiana, the parties' Settlement Agreement implies that the parties intended to resolve future issues through the Indiana court by relying on Indiana law. First, the parties' Decree recites that "any legal actions to enforce this Agreement shall be governed by the applicable laws of the State of Indiana . . . [and] any modifications pertaining to child-related issues, shall be governed by the laws of the State of Indiana." Mother lived in Michigan at the time she signed the Settlement Agreement and Dissolution Decree and could have asked to leave the application of law issue open or to have the laws of Michigan apply. Instead, the parties agreed on the application of Indiana law. This implies that any post-dissolution litigation would be heard by an Indiana court that is more readily able to interpret and apply Indiana law than a Michigan court.

The parties' agreement expressly states that Indiana law will govern "any modifications pertaining to child related issues," and it is clear the parties considered the Indiana Parenting Time Guidelines in crafting their agreement. . . . Finally, the parties specifically agreed that any change in the parenting time would be preceded by a parenting time evaluation and legal custody evaluation by an evaluator from Meridian Psychological Associates located in Indianapolis, Indiana. Again, the parties could have named a service provider from Michigan or could simply have said nothing as to who would conduct the

evaluation. Instead, they consciously tied themselves to Indiana for the purpose of resolving this issue.

8.    The nature and location of evidence . . . required to resolve the pending issue. [S.] herself, as a five-year-old, will likely not be testifying in this matter. Mother assets that [S.] is particularly close to a number of relatives in Michigan that [may need to be called as witnesses]. There has been no assertion, however, that traveling to Indiana would impose any undue hardship on any of these relatives if they are called to testify. Moreover, to the extent that professional witnesses are required, these can be accommodated by telephone . . . or video conferencing facilities available to the Court here in Indiana. . . .

        While a number of witnesses could be called to testify, the parties themselves have placed the highest priority on the custody evaluator. This is the only potential witness set forth in the parties' Settlement Agreement. Moreover, the parties agreed that this evaluator would be chosen from Meridian Psychological Associates, showing their faith in that practice's expertise. Dr. Janine Miller was selected and has completed the custody evaluation, and Dr. Miller resides in Indiana, making it a hardship to travel to Michigan to testify in person. While Dr. Miller could also testify electronically, given the importance the parties attached to the selection of a custody evaluator from Meridian Psychological Associates, Dr. Miller is a key witness who should be heard and seen in person. . . . Finally, it also appears that the faith that the parties put in Meridian Psychological Associates was well placed, as Dr. Miller has provided a series of recommendations that both parties seem to agree form a blueprint for a resolution of their dispute. This would eliminate the need for any immediate hearing on the pending issue.

9.    The ability of each court to decide the issue expeditiously and procedures necessary to present the evidence. The Court has already indicated above that teleconferencing and videoconferencing facilities exist to accommodate Michigan

witnesses, and the Court has no reason to believe that it cannot resolve the issues as expeditiously here in Indiana as a Michigan court. . . .

10.    The familiarity of the court of each state with the facts and issues in the pending litigation. . . . [t]he Court has acquired a familiarity based upon the parties' pleadings, and most recently, the custody evaluation report filed by Dr. Miller. This is far more familiarity than the Michigan court would have at this point. . . .

For the above reasons, the Court finds that it is not appropriate for the Michigan court to exercise jurisdiction in this case and that the Indiana court is not an inconvenient forum to resolve the issues that are pending.

(App. 252-57).

[10]    Mother filed a motion asking the trial court to certify the jurisdictional issue for interlocutory appeal, which the trial court denied. In June 2015, the trial court issued an order that resolved all pending issues. This Court granted Mother's motion to stay the June 2015 order pending her appeal of the denial of her motion to transfer jurisdiction to Michigan.

# Decision

[11]    Mother argues that the trial court erred in denying her motion to transfer jurisdiction to Michigan. Under the UCCJA, a trial court may decline to exercise its jurisdiction any time before issuing a decree if it finds that it is an inconvenient forum and that a court of another state is a more appropriate forum. IND. CODE § 31-17-3-7. A court's decision as to whether to exercise jurisdiction is reviewable for an abuse of discretion. *Barwick v. Ceruti*, 31 N.E.3d

1008, 1014 (Ind. Ct. App. 2015). In reviewing the court's decision, we consider only the evidence most favorable to the decision and reverse only where the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Id.*

[12] In determining whether to relinquish its jurisdiction to a more convenient forum, a court is required to consider whether it is in the child's interest that another state assume jurisdiction. *Id.* at 1015. In making that determination, the court may consider the following factors:

> (1) Whether domestic violence has occurred and is likely to continue in the future and which state is best able to protect the parties and the child;
>
> (2) The length of time the child has resided outside Indiana;
>
> (3) The distance between the Indiana Court and the court in the State that would assume jurisdiction;
>
> (4) The relative financial circumstances of the parties;
>
> (5) An agreement of the parties as to what state should assume jurisdiction;
>
> (6) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony;
>
> (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8)   The familiarity of the court of each state with the facts and issue in the pending litigation.

IND. CODE § 31-21-5-8(b).

[13]   Here, the trial court thoroughly reviewed each of these factors and noted that: (1) domestic violence was not a factor because there was no evidence to corroborate Mother's allegations; (2) S.'s five years in Michigan was not a major factor because her degree of involvement in the community and activities were not as great as with an older child; (3) Mother and Father agreed that the long-term plan involved S. visiting Father in Indiana; (4) distance was not a factor because both parties could afford to travel; (5) Mother earns $190,000 per year and Father earns $240,000 per year; (6) although there was no explicit agreement as to which state should assume jurisdiction, the settlement agreement implied that the parties intended to resolve future issues in an Indiana court; (7) the parties specifically agreed to an evaluation from a clinical psychologist from Meridian Psychological Associates, located in Indiana; (8) S. would not be testifying and any adult witnesses could be accommodated by telephone or video conferencing; (9) the child custody evaluation had been completed, and the evaluator is a key witness who should be seen and heard in person; (10) the Indiana court could resolve issues as expeditiously as a Michigan court; and (11) the Indiana court was familiar with the pleadings and the thirty-seven-page custody evaluation.

[14]   In light of the evidence that (1) the parties contemplated resolving future issues in Indiana and agreed to use a clinical psychologist in Indiana to complete the

custody and parenting time evaluation; (2) the trial court's familiarity with the pleadings and detailed custody evaluation; and 3) the importance of the evaluator as a key witness being able to testify in person, we find no abuse of the trial court's discretion.

[15] We further note that the two primary purposes of the UCCJA are to discourage forum shopping and to protect the best interests of the child. *Ceruti*, 31 N.E.3d at 1015. Both of these purposes would be served by the Indiana Court's jurisdiction over the case. The trial court did not abuse its discretion in denying Mother's motion to transfer jurisdiction to Michigan.

[16] Affirmed.

Kirsch, J., and Riley, J., concur.